IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JUANA CABÁN-ORTIZ,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

CIVIL NO.: 10-1664 (MEL)

**OPINION AND ORDER**

## I.   PROCEDURAL POSTURE

Plaintiff Juana Cabán-Ortiz ("plaintiff" or "claimant") was born on June 9, 1961.  (Tr. 80).

She completed high school and worked as a hand cementer in a shoe factory from 1979 until March

of 2000.  (Tr. 130, 168, 177).  Plaintiff states that she suffers from major depressive disorder with

psychotic features and back pain.  (Tr. 83).  She claims her depression began after she had to leave

her job at the shoe factory due to stress and harassment.  (Tr. 177).

On September 8, 2004, plaintiff filed an administrative claim for a period of disability and

disability insurance benefits, alleging disability beginning March 1, 2002.  (Tr. 17, 82-83).

Plaintiff's application for social security benefits was denied initially as well as on reconsideration.

(Tr. 17, 28-34, 38-49).  After plaintiff's timely request was granted, a hearing took place before an

Administrative Law Judge ("ALJ") on June 2, 2008  (Tr. 17, 287-93).  Plaintiff waived her right to

appear at the hearing, but her attorney appeared on her behalf.  (Tr. 17, 60-62).  A vocational expert,

Dr. Ariel Cintrón Antommarchi, also appeared and testified at the hearing.  (Tr. 17, 209-93).  On

July 22, 2008, the ALJ issued a decision denying plaintiff's claim.  (Tr. 19-23).  The Appeals

Council denied plaintiff's request for review of the ALJ's decision on May 14, 2010, and the ALJ's decision thus became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant").  (Tr. 3-5).

On July 15, 2010, plaintiff filed a complaint in this case seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), alleging that the ALJ's decision was not based on substantial evidence.  (Dkt. No. 1).  On February 1, 2011, defendant filed an answer and, subsequently, a certified transcript of the administrative record.  (Dkt. No. 14).  Both parties have submitted supporting memoranda.  (Dkt. Nos. 19, 20).

## II.   LEGAL STANDARD

Section 205(g) of the Social Security Act provides, *inter alia*, that a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," and that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).

"In Social Security cases, the [c]ourt must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error."  López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).  The Commissioner's "findings of fact are conclusive when supported by substantial evidence in the record, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per

curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Hernández-Guzman v. Astrue, 2009 U.S. Dist. LEXIS 99213, at *5 (D.P.R. Oct. 23, 2009) (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971), cert. denied, 402 U.S. 976).  Moreover, the First Circuit has held that a determination of substantiality must be made based on the record as a whole.  See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence."  Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodríguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled with the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987).  A claimant is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S. C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to the five-step sequential evaluation process prescribed by Social Security regulations. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42. Step one requires the ALJ to determine whether the claimant is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). If she is not, the ALJ proceeds to step two to determine whether the claimant has "a severe medically determinable physical or mental impairment" or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimaint does not have a severe impairment or combination of impairments, then disability benefits are denied. 20 C.F.R. § 404.1520(c). If she does, then the ALJ goes to step three to determine whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the claimant is found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ moves on to step four, to assess whether the claimant's impairment or impairments prevent her from doing the work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant can perform her past relevant work despite her impairment(s), then disability benefits are denied. 20 C.F.R. § 404.1520(f). If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity–that is, her ability to function notwithstanding her impairment(s)–combined with her age, education, and work experience, allows her to perform any other work. 20 C.F.R. § 404.1520(a)(4)(v). If she can, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

Under steps one through four, the plaintiff has the burden of proving that she cannot return to her former job because of her impairment or combination of impairments. Berríos Vélez v. Barnhart, 402 F. Supp. 2d 386, 390 (D.P.R. 2005) (citing Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam)). Once she has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

## III.   THE ALJ'S FINDINGS

After evaluating the evidence on record, the ALJ made the following findings:

1.  Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2005 (Tr. 19);

2.  Plaintiff did not engage in substantial gainful activity between March 1, 2002, her alleged onset date, and June 30, 2005, her last date insured (Tr. 19) (citing 20 C.F.R. § 404.1520(b) and § 404.1571, *et. seq.*);

3.  Through her last date insured, plaintiff had the following severe impairments: bulging annulus at L4-L5 level, disc protrusion at L5-S1 level and "a major depression" (Tr. 19) (citing 20 C.F.R. § 404.1520(c));

4.  Through her last date insured, claimant did not have an impairment or combination of impairments that matched or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19) (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526);

5. Through her date last insured, plaintiff had the residual functional capacity to perform the full range of light work, as defined in 20 C.F.R. § 404.1520(d), and unskilled mental functions;

6. Through the date last insured, plaintiff's past work as a hand cementer did not require her to perform "work-related activities precluded by [her] residual functional capacity," (Tr. 20) (citing 20 C.F.R. § 404.1565); and

7. Plaintiff "was not under a disability as defined in the Social Security Act, at any time from March 1, 2002, the alleged onset date, through June 30, 2005, the date last insured." (Tr. 22) (citing 20 C.F.R. § 404.1520(f)).

## IV.   THE MEDICAL EVIDENCE CONTAINED IN THE RECORD

The certified administrative record contains, *inter alia*, the following medical evidence regarding plaintiff's physical conditions:

Dr. Rafael Santos-Llanos ("Dr. Santos"), who treated plaintiff in a series of monthly visits from August 13, 1996 through March 3, 2006, submitted a questionnaire dated March 3, 2006 and two pages of progress notes. (Tr. 279-85). Dr. Santos diagnosed plaintiff with severe muscle spasms that significantly limited her range of motion and caused moderate severe pain. (Tr. 279). He indicated that plaintiff's cervical spine impairment caused severe headache pain approximately twice per month, resulting in vertigo, nausea/vomiting, inability to concentrate, and mental confusion. (Tr. 280). He determined that plaintiff could sit for an hour and ten minutes before needing to get up and that she could stand up for an hour and five minutes without needing to sit down; however, he also stated that, during an eight-hour work day, plaintiff must walk around for approximately ten minutes every ten minutes. He further noted that plaintiff needs a job that permits shifting positions from sitting, standing or walking. (Tr. 281-82). Additionally, he indicated that plaintiff can never lift and carry objects weighing less than ten pounds in a competitive work situation. (Tr. 282). He opined that plaintiff's pain and other symptoms were only occasionally severe enough to interfere with the

6

attention and concentration needed to perform simple work tasks (Tr. 281) and that her impairments were never likely to cause her to be absent from work.  (Tr. 283).

Plaintiff also received treatment from Aguadilla Medical Services on August 16, 2004 and September 23, 2005.  (Tr. 211-17).  During her first visit, an x-ray was taken that revealed rotary lumbar levoscoliosis and L5-S1 invertebral osteochondrosis.  (Tr. 217).  On September 23, 2005, plaintiff sought treatment for pain the left side of her rib cage which was causing cramps in her left leg.  (Tr. 211-12).  She was diagnosed with renal colic and acute muscular spasms.  (Tr. 214).

A state agency consultant, Dr. Osvaldo Rivera Marrero ("Dr. Marrero"), a family physician, reviewed plaintiff's case on February 8, 2005.  (Tr. 184-91).  He completed a physical residual functional capacity assessment, in which he indicated that plaintiff had no manipulative limitations, but did have some exertional and postural limitations.  (Tr. 185-87).  Her postural limitations, he indicated, allowed her to climb, stoop, crouch and crawl only occasionally.  (Tr. 186).  He noted that her postural limitations allowed her to occasionally lift 50 pounds and frequently lift 25 pounds.  (Tr. 185).  He opined that she could stand and/or walk for a total of about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, and had unlimited abilities to push and/or pull. (Tr. 185).

On February 10, 2005, Dr. Iris A. Acevedo-Marty ("Dr. Acevedo"), a consultant neurologist, examined plaintiff.  Dr. Acevedo noted that plaintiff reported her pain to be "almost constant," and that being in the same position for more than a few minutes exacerbates her symptoms.  (Tr. 168). Plaintiff further reported that medication improves her symptoms but causes "significant" drowsiness.  (Tr. 168).  Dr. Acevedo observed "[t]enderness to palpation at [plaintiff's] whole spine with cervical muscle spasms (moderate)."  (Tr. 169).  She further observed adequate muscle mass

and 5/5 strength for all plaintiff's extremities, except for her right handgrip, which was 4/5.  (Tr. 170).  She indicated that plaintiff had no hand limitations and she could perform functions with the hands in a sustained manner, as long as she avoided heavy weight objects.  (Tr. 172).  She noted that straight leg raising caused plaintiff pain when in a supine position and, on her right side, while seated.  (Tr. 170).  In the range of motion chart, she noted limitations in plaintiff's forward shoulder elevation (90 degrees out of a possible 150 degrees), shoulder abduction (90 out of 150 degrees), elbow supination (8 out of 80 degrees on the right side and zero on the left side), and lumbar flexion-extension (30 out of 90 degrees).  (Tr. 173-75).  As to plaintiff's cerebral functioning, Dr. Acevedo noted no aphasia, apraxia or agnosia, but that plaintiff could not walk on her heels and toes and could not do the tandem gait.  (Tr. 169-70).  Regarding plaintiff's psychological state, Dr. Acevedo found her to be "[a]lert, active, [and] oriented x3 [in three spheres]," and she observed [n]o hallucinations, delusions, or unusual behavior."  (Tr. 169).  Dr. Acevedo's diagnostic impression was chronic lower back pain, chronic cervical pain, and carpal tunnel syndrome and her neurological prognosis was "guarded."  (Tr. 170).  Her assessment of plaintiff's functional capacity was that she could "walk, sit, stand, handl[e] light weighted objects, hear, speak, and travel."  (Tr. 170).

On September 24, 2005, plaintiff sought medical assistance from the emergency room at the Buen Samaritano Hospital in Aguadilla due to lower back pain.  (Tr. 221-23).  She was diagnosed with lumbar pain and prescribed pain medication.  (Tr. 221).  She returned to the hospital three days later, complaining of recurrent lower back pain.  (Tr. 218).  At that time, she was provisionally diagnosed with sciatica.  (Tr. 219).

The certified administrative record contains, *inter alia*, the following medical evidence regarding plaintiff's mental conditions:

8

Dr. Ariel Rojas ("Dr. Rojas") was plaintiff's treating psychiatrist from February 5, 2002 through December 16, 2005. (Tr. 248-50). He submitted a treatment summary dated December 22, 2005 and a questionnaire dated August 12, 2004. (Tr. 248-56).[1] He diagnosed her with recurring major depressive disorder with the following symptoms: anhedonia (pervasive loss of interested in almost all activities), appetite disturbance with weight change, feelings of guilt or worthlessness, difficulty thinking or concentrating, psychomotor agitation or retardation, persistent disturbances of mood or affect, memory impairment (short, intermediate or long-term), and sleep disturbance. (Tr. 250). He determined that plaintiff was unable to meet competitive standards for all of the listed mental abilities and aptitudes required to perform skilled or unskilled work. (Tr. 253-54). Additionally, he noted that plaintiff had marked functional limitations that restricted her activities of daily living, caused difficulties in maintaining social functioning, as well as deficiencies of persistence or pace. (Tr. 254). Additionally, he reported that she had experienced three repeated episodes of decompensation within a 12 month period, each of which lasted at least two weeks. (Tr. 254). He indicated that he expected plaintiff's impairments or treatment to cause her to be absent from work for more than four days per month. (Tr. 255).

Plaintiff was also examined on March 7, 2005, by Dr. Armando Caro ("Dr. Caro"), a consultant psychiatrist. (Tr. 177). He observed that plaintiff had been under psychiatric treatment since 1999 and was prescribed Nortriptyline (50 mg), Seroquel (100 mg), and Alprazolam (0.5 mg). (Tr. 177). According to Dr. Caro, plaintiff stated that she "started feeling depressed after she had to quit working due to stress and harassment at her job." (Tr. 177). He observed that plaintiff was

---

[1] The questionnaire indicates that plaintiff visited Dr. Rojas every one or two months from March 2002 through November 2003 and every three months from January 2004 to June 2004. (Tr. 250). The evaluation by Dr. Caro, dated March 7, 2005, states that patient was seeing Dr. Rojas every three to four months at that time. (Tr. 177).

poorly groomed, had poor eye contact and moderate psychomotor retardation. (Tr. 178). He noted that plaintiff said she "hears voices calling her" (Tr. 177), but then wrote that she "denied auditory/visual hallucinations." (Tr. 178). He stated that her speech was fluent, coherent, and logical, but she was "only partially oriented in time and space" (178). He observed that her concentration and short term memory were impaired, her remote memory was fair, her abstract thinking was impaired, and her judgment and insight were poor. (Tr. 178). Dr. Caro administered the Folstein Mini Mental Status Examination, on which plaintiff scored 16 out of 30, indicating a moderate cognitive impairment.[2] (Tr. 178-79). Dr. Caro's diagnostic impression was major depressive disorder and moderate pain disorder associated with a general medical condition. (Tr. 178). He opined that plaintiff had no capacity to handle her own funds, that her capacity for social interaction was impaired, and that her prognosis was guarded. (Tr. 178).

On March 30, 2005, Dr. Carlos Vázquez, a clinical psychologist and state agency medical consultant, completed a psychiatric review of plaintiff's file and a residual functional capacity questionnaire after reviewing the medical evidence in her file. (Tr. 192-210). He determined that plaintiff suffered from depressed mood (Tr. 196), which caused mild restriction of her activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (Tr. 203). As to her residual functional capacity, he found that plaintiff's condition moderately limited her abilities in some areas, including the ability to understand, remember and carry out detailed instructions, the ability to make simple work-related decisions, and the ability to maintain attention and concentration for extended periods. (Tr. 207). He also determined that her "ability to complete

---

[2]The English translation of the Mini Mental Status Examination indicates that plaintiff's score was 13 out of 30, while the original Spanish version of the test results show that her score was 16 out of 30. (Tr. 179, 182).

a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods" was moderately limited. (Tr. 208). His notes state that she can understand and carry out simple instructions, sustain enough concentration and attention to perform simple tasks, perform simple tasks as per a scheduled routine and relate to "some people." (Tr. 209-10).

Dr. Ramón Nevares ("Dr. Nevares"), a psychiatrist and a state agency medical consultant, also completed a psychiatric review and residual functional capacity assessment after reviewing the medical evidence, on December 29, 2005. (Tr. 21; 258-76). Dr. Nevares indicated that plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions, but she was moderately limited in her ability to understand and remember detailed instructions and to remember locations and work-like procedures. (Tr. 259). He also indicated that she was not significantly limited in most of the listed skills needed for sustained concentration and persistence, social interaction, and adaptation. (Tr. 259-60). He further determined that plaintiff was not significantly limited in her "ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 260). Dr. Nevares's detailed notes state that plaintiff was "in good contact with reality and cognitively intact . . . [her] pharmacologic regimen suggests a very mild condition [and her] antidepressant dose [is] homeopathic." (Tr. 261). He concluded that plaintiff could "hear, understand, remember, process, analyze, and carry out simple instructions . . . perform simple tasks . . . interact appropriately with co-workers and supervisors . . . [and] complete a normal workday/work week without undue interruptions." (Tr. 261). He also determined that plaintiff suffered from a histrionic personality disorder that caused a mild degree of

11

limitation in maintaining concentration, persistence, or pace as well as social functioning.  (Tr. 266; 273).

### V.   LEGAL ANALYSIS

The findings of the Commissioner reflect an application of step four of the sequential evaluation process, in which the plaintiff must demonstrate that she can no longer perform her former work due to her impairments.  See 20 C.F.R. § 404.1520(e); Manso-Pizarro, 76 F.3d at 17. In denying plaintiff's claim under this step, the ALJ determined that plaintiff's residual functional capacity permitted her to perform the full range of light work and to engage in unskilled mental functions.  (Tr. 19-20).  The ALJ then found that plaintiff's past work as a hand cementer in a shoe factory required her to perform light work activities and engage in unskilled mental functions.  (Tr. 22).  Therefore, the ALJ concluded that her limitations did not prevent her from performing her past work, thus ending the analysis at step four.  (Tr. 22).

Specifically, the ALJ determined that plaintiff has "the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) . . . [which] involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requires "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities...." (Tr. 19).  The ALJ also determined that plaintiff would be able to "engage in unskilled mental functions," which requires a person "to understand, remember and carry out simple instructions, use judgment in simple work related situations, respond appropriately to supervisor, co-workers and usual work situations, deal with changes in a routine work setting, tolerate criticism and normal work

production stress and meet regular attendance and production schedules." (Tr. 19-20).  The ALJ found that plaintiff's former job required her to "perform work activities at a light level of exertion and engage in unskilled mental functions . . . ." (Tr. 22).  He stated that he compared plaintiff's residual functional capacity on the date last insured with the physical and mental demands of the work and thus found that "the claimant was able to perform it as it was actually and generally performed." (Tr. 22).  The ALJ noted that the vocational expert testified as to the exertional and skill requirements of the job, and found that plaintiff would be able to perform them.  (Tr. 22).  He thus concluded that plaintiff's past relevant work was within her residual functional capacity.  (Tr. 22).

Plaintiff contends that she is incapable of performing past relevant work and that the ALJ's decision was not based on substantial evidence because 1) the ALJ failed to give proper weight to the opinions of treating physicians, 2) the ALJ did not describe plaintiff's residual functional capacity in sufficient detail nor perform a function by function comparison of her abilities with the job's requirements, and 3) the relevant medical assessments were not presented to the vocational expert, making his testimony irrelevant.  (Dkt. No. 19, p. 7-20).

A.    The ALJ's failure to rely on the opinions of treating physicians

Plaintiff asserts that the ALJ "swept aside the reports and progress notes of . . . Dr. Ariel Rojas" and "disregarded the most longitudinal and current medical information in the record," while erroneously relying on the opinions of non-examining state agency medical consultants.  (Dkt. No. 19, p. 14, 18).  It was not necessarily erroneous for the ALJ to rely on non-examining physicians' opinions; however, he was required to explain his reasons for doing so.  ALJs must explain the weight given to each medical opinion relied upon in making the disability determination, especially those of treating physicians.  Without such an explanation, a reviewing court cannot determine if the

13

ALJ's decision is based on substantial evidence. Because the ALJ did not sufficiently explain the weight given to the medical opinions discussed in his decision, the case will be remanded.

A written report by a non-examining physician may indeed constitute the substantial evidence needed to support the ALJ's findings. Such a report may be "entitled to evidentiary weight, which 'will vary with the circumstances, including the nature of the illness and the information provided the expert.'" Berríos Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (quoting Rodríguez v. Secy' of Health & Human Servs., 647 F.2d 218, 223 (1st Cir. 1981)); see also SSR 96-6p, 1996 SSR LEXIS 3 ("The opinion of a State agency medical ... consultant ... may be entitled to greater weight than a treating source's medical opinion if the State agency medical ... consultant's opinion is based on a review of a complete case record . . . .").[3] Therefore, it is proper for the ALJ to give the most weight to the opinions of state agency doctors, as long as his rationale for doing so is supported by substantial evidence in the record. See id., 20 C.F.R. § 404.1527(f)(2)(ii).

The ALJ must, however, make his reasons for crediting a non-examining source and rejecting a treating source clear in his decision. In evaluating a claim for disability benefits, the Commissioner "will generally 'give more weight to opinions from ... treating sources," and 'will always give good reasons . . . for the weight . . . [given to a] treating source's opinion.'" Black & Decker Disability Plan v. Nord, 538 U.S. 822, 829 (2003) (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). A treating source will be given controlling weight, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

---

[3] Plaintiff cites Browne v. Richardson, 468 F.2d 1003, 1006 (1st Cir. 1972) in support of her argument that reliance on written reports by non-examining physicians cannot constitute substantial evidence. Her argument mischaracterizes the controlling case law, however, because the holding in Browne was limited by subsequent cases holding that the "principle in Browne was not an absolute rule." Berríos Lopez, 951 F.2d at 431 (citing Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)); Rodríguez, 647 F.2d at 223).

evidence in [the] record." 20 C.F.R. 404.1527(d)(2).  Even when a treating physician's opinion is

not deemed controlling, the ALJ must still take into account:  the length of the treatment relationship,

frequency of examination, nature and extent of the treatment relationship, the degree to which the

opinion is supported by medical signs and laboratory findings, the consistency of the opinion with

the record as a whole, and whether the opinion was from a specialist.   20 C.F.R. §

404.1527(d)(2)-(5).  Additionally, the ALJ "*must explain in the decision* the weight given to the

opinions of a State agency . . . consultant . . .  or other program physician, psychologist, or other

medical specialist . . . [as well as] any opinions from treating sources, nontreating sources, and other

nonexamining sources who do not work for [the agency]." 20 C.F.R. § 404.1527(f)(2)(ii) (emphasis

added).  The regulations require the ALJ to provide "specific reasons for the weight given to the

treating source's medical opinion . . . and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and

the reasons for that weight."  SSR 96-2p, 1996 SSR LEXIS 9, at *12.

Here, the ALJ's decision does not articulate the weight given to any of the opinions, except

for that of Dr. Caro.  In the section of his decision addressing plaintiff's residual functional capacity,

the ALJ began by summarizing the medical opinions of Drs. Santos, Acevedo, Rojas, and Nevares,

and the treatment records from Aguadilla Medical Services (Tr. 20-21).  He then noted that he

declined to give controlling weight to Dr. Caro's medical opinion because it was "not well-supported

by medically acceptable diagnostic techniques and is not consistent with his own reported findings

since the claimant was found logical and coherent and with no hallucinations, delusions or perceptual

disturbances." (Tr. 21).  Then, the ALJ went on to state his conclusions as to plaintiff's capabilities,

which closely match the opinions of Drs. Acevedo,  Nevares, and Marrero, indicating that he relied

on those sources.  (Tr. 20, 22).  He did not, however, state why he discounted any of the other medical opinions besides Dr. Caro's, nor why he decided to credit Drs. Acevedo, Nevares, and Marrero.[4]  Significantly, the ALJ did not credit the opinions of plaintiff's treating physicians, Drs. Santos and Rojas, whose evaluations were based on long and consistent treatment relationships that included the time period surrounding the alleged disability onset date of March 1, 2002.  (Tr. 248-50, 279-85).

Furthermore, the amount of weight given to the opinions of Dr. Santos and Dr. Rojas was material to the outcome of the disability determination.  While questioning the vocational expert, the ALJ asked him whether plaintiff would be able to perform her past relevant work if he "were to give credibility to the findings . . . in the report of Dr. Ariel Rojas, where there are diagnostics of recurring major severe depression and other mental functional limitations . . . ."  (Tr. 293).  The vocational expert answered that plaintiff would not be able to perform the work described "in a sustained manner."  (Tr. 293).  The ALJ then asked the vocational expert the same question with respect to Dr. Santos's report, "where she has striking physical limitations . . . ."  (Tr. 293).  The expert again responded that plaintiff would not be able to perform the said jobs because "the residual limitations shown by the exhibits [containing Dr. Santos's report] are less than sedentary . . . ."  (Tr. 293).  In his decision, the ALJ relied on the vocational expert's report in concluding that plaintiff could perform her past work as a hand cementer.  (Tr. 22, ¶ 6).  Because the vocational expert clearly stated that plaintiff could not perform her past work if her limitations were as Drs. Santos and Rojas

---

[4] While the ALJ did not actually discuss Dr. Marrero's opinion in his decision, his was the only evaluation of record indicating that plaintiff could carry more than 10 pounds, (Tr. 185), and thus the only evidence upon which the ALJ could have based his conclusion that plaintiff could carry up to 20 pounds at a time and frequently carry objects weighing up to 10 pounds.  (Tr. 19).

described, it is essential to understand whether the ALJ properly rejected their opinions and if he accorded them any weight at all, as per the factors listed in 20 C.F.R. § 404.1527(d)(2)-(5).

The Commissioner argues in his memorandum of law that there are inconsistencies between the treating physicians' reports and other evidence on the record, thus justifying the ALJ's ultimate rejection of their opinions. For example, the Commissioner notes that Dr. Nevares concluded that plaintiff's mental impairments were mild and that she could perform unskilled work, contradicting Dr. Rojas's opinion. (Dkt. No. 20, p. 16). The Commissioner's explanation, however, "is not evidence of record which the court can consider at this time. More so, at this stage of the judicial process, the Commissioner cannot amend the decision of the ALJ." Martínez v. Comm'r of Social Sec., 306 F. Supp. 2d 98, 99 (D.P.R. 2004) (remanding case because ALJ did not state his reasons for rejecting the opinions of plaintiff's treating physicians, thus preventing court from determining if decision was supported by substantial evidence). For this reason, the case must be remanded so that the ALJ may sufficiently explain his decision not to provide Dr. Santos's and Dr. Rojas's opinions controlling weight and to explain how he used their opinions in reaching his decision.

It is, of course, the ALJ's prerogative to "sift[] and weigh[]" any "ambiguities and inconsistencies in the record," Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037 at *4 (1st Cir. 1994) (unpublished), and he is "not required to cite every piece of evidence that favor[s] [plaintiff]." Meléndez v. Comm'r of Social Sec., 125 F.3d 841 (1st Cir. 1997) (unpublished). However, the ALJ should explain how he relied on the evidence that he did cite and indicate how and why he weighed any ambiguities he confronted. See 20 C.F.R. § 404.1527(f)(2)(ii). Upon remand, therefore, the ALJ must indicate how much weight he gave to each of the medical opinions

17

that he cited in his decision and why he did so–specifically, those of Drs. Santos, Acevedo, Rojas, and Nevares, and Aguadilla Medical Services.

**B.     The ALJ's comparison of plaintiff's residual functional capacity with the demands of her past relevant work**

Plaintiff contends that the ALJ's decision is flawed because it "lacks a proper or specific description of plaintiff's residual functional capacity [and] of past relevant work as generally performed or as actually performed." (Dkt. No. 19, p. 7). She cites Social Security Ruling 82-62, which requires that the ALJ make the following three findings of fact before concluding that a claimant can perform her past relevant work: 1) a finding as to the claimant's residual functional capacity, 2) a finding as to the physical and mental demands of the past job, and 3) a finding that the individual's residual functional capacity would allow her to return to her past job. (Dkt. No. 19, p. 8). A review of the ALJ's decision, and the vocational expert testimony upon which he relied, shows that he did make the three required findings, and that they were based on substantial evidence in the record.

With respect to plaintiff's physical residual functional capacity, the ALJ found that, despite her limitations, she was capable of performing "the full range of light work, as defined in 20 C.F.R. § 404.1567(b)." (Tr. 19). The ALJ went on to describe what functions light work requires, including "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," "a good deal of walking or standing," or, if sitting most of the time, "some pushing and

pulling of arm or leg controls." (Tr. 19). This description of plaintiff's physical capabilities is sufficient to permit a comparison with her past relevant work.[5]

In addressing plaintiff's mental impairments, the ALJ determined that they "moderately restricted" her daily activities, that "she had moderate difficulties in maintaining social functioning . . . she seldom presented deficiencies of concentration, persistence and pace; and has had no episodes of deterioration or decompensation in work or work-like settings." (Tr. 22). The ALJ concluded that these limitations only precluded plaintiff from performing skilled work, but did not prevent her from performing unskilled work, and he proceeded to list the required capabilities for unskilled work. (Tr. 22). The ALJ did, therefore, explain in detail his decision as to plaintiff's mental residual functional capacity.[6]

Regarding the physical and mental demands of plaintiff's past work, the ALJ found that her job required her "to perform work activities at a light level of exertion and engage in unskilled mental functions . . . ." (Tr. 22). As previously indicated, the ALJ had already described the physical functions required for light work and the mental functions required for unskilled work. (Tr. 19; 22). Additionally, the ALJ wrote that the vocational expert had testified as to the exertional and skill levels of plaintiff's job, which were consistent with its description in the Dictionary of Occupational Titles ("DOT"). (Tr. 22). The transcript of the vocational expert's testimony shows that he described in detail the physical and mental functions required to perform plaintiff's past work

---

[5]As discussed already, the only issue with this description is that the ALJ does not indicate anywhere in his decision why he concluded that plaintiff can lift up to 20 pounds and can sit or stand for long periods of time, notwithstanding the contrary opinion of her treating physician, Dr. Santos. (Tr. 279-83).

[6] Once again, the problem remains that the ALJ failed to explain why he chose to adopt the medical evaluations stating that plaintiff was only moderately impaired over Dr. Rojas's opinion that plaintiff's depression severely impaired her mental functioning.

as a hand cementer.  (Tr. 290-91).  The vocational expert stated that the "physical demands of [the] job are light [and] non skilled."  (Tr. 291).  He described the job as it is defined in the DOT and described the specific way that plaintiff had stated she performed her job.  (Tr. 290-91) ("In the claimant's case, she would glue the inside parts of the shoe. . . . she used some rollers where she would insert the parts and these rollers would apply the glue and then she would proceed to glue the parts inside the shoe.").  Both types of descriptions of a claimant's past relevant work–either as defined in the DOT or as the claimant states she actually performed it–are acceptable for the purposes of comparing the functions with a claimant's residual functional capacity.  See SSR 82-61 (cited in Dkt. No. 19-1, p. 1).  Notably, plaintiff's attorney did not object to the expert's description of her past work, nor did plaintiff attend the hearing and provide any testimony to the contrary.  By referencing the vocational expert's testimony, the ALJ incorporated this description into his opinion, and thus his finding as to the physical and mental demands of plaintiff's past job are sufficiently detailed and supported by substantial evidence in the record.

Finally, the ALJ stated that plaintiff's past relevant work, as described by the vocational expert was "within [her] residual functional capacity,"  (Tr. 22), which is the final requirement of SSR 82-62.  The ALJ had already provided a detailed description of plaintiff's physical and mental capabilities and the corresponding capabilities that her past work required.  Therefore, plaintiff's contention that the ALJ's decision is flawed for lack of specificity regarding the her residual functional capacity and past relevant work is untenable.

**C.     Whether the vocational expert based his testimony on the relevant medical assessments**

Plaintiff alleges that the "relevant medical assessments" were not presented to the vocational expert, Dr. Ariel Cintrón Antommarchi ("Dr. Cintrón"), making his testimony irrelevant because it did not accurately reflect all of her limitations.  (Dkt. No. 19, p. 11-12).  The vocational expert's testimony indicates that he had at least reviewed the medical evaluations from Drs. Santos and Rojas, the treating physicians.  As discussed above, the ALJ specifically asked the vocational expert whether plaintiff would be able to perform her past work if he were to credit the opinions of Drs. Santos and Rojas.  (Tr. 293).  By answering in the negative, the vocational expert made clear that he had indeed read those medical opinions.  (Tr. 293).  Plaintiff's attorney did not make any objections to the expert's testimony at the hearing, nor did he indicate at that time that the expert had not reviewed plaintiff's medical records.

Plaintiff further states that "[t]he hypothetical posed to a [vocational expert] must accurately reflect the claimant's limitation in order for the [vocational expert's] response to constitute substantial evidence."  (Dkt. No. 19, p. 12) (citing Arocho v. Sec'y of Health & Human Svcs., 670 F.2d 374 (1st Cir. 1982).  While this may be true, plaintiff has made no argument, nor does the record show, that the hypothetical questions the ALJ posed failed to meet this requirement.  The ALJ posed three different hypotheticals to Dr. Cintrón.  (Tr. 291, 293).  First, he asked if someone with a light to medium residual functional capacity, "mental functional limitations from mild to moderate, who would only have the capacity to perform non-skilled work, which implies following simple instructions, and who has enough attention and concentration to perform non-skilled job" would be able to perform plaintiff's past relevant work as a hand cementer.  (Tr. 291).  The vocational expert

answered in the affirmative.  Next, as discussed previously, the ALJ asked Dr. Cintrón if plaintiff would be able to perform her past work if she had the limitations described by Drs. Santos and Rojas, and he answered that she could not.  (Tr. 293).  In the first hypothetical, the ALJ assumed that plaintiff's limitations allowed her to perform a full range of light, unskilled work, a conclusion which he later stated in his decision.  (Tr. 19-22).  This conclusion formed a proper basis for the question because "[h]ypothetical questions need only 'reasonably incorporate[ ] the disabilities *recognized by the ALJ*'" for the expert's answer to constitute substantial evidence.  Vélez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 469 (D.P.R. 2010) (quoting Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994) (per curiam))  (alterations and emphasis in original).

## III.   CONCLUSION

Based on the foregoing, this case is REMANDED to the ALJ so that he may explain how he weighed the relevant medical opinions in the record, why he accorded the weight he did to each opinion, and why he did not give controlling weight to the opinions of plaintiff's treating physicians. This order shall not be construed as an opinion on the ultimate merits of plaintiff's disability claim upon remand.

In San Juan, Puerto Rico, this 16th day of December, 2011.

s/Marcos E. López
U.S. Magistrate Judge